Good afternoon. Illinois Appellate Court First District Court is now in session. The Sixth Division. The Honorable Justice Sanjay T. Taylor presiding. Case number 24-0221, People v. Andrea Billups-Dryer. Good afternoon. My name is Sanjay Taylor. I'm joined by my, I'm the presiding justice in the Sixth Division of the First District Appellate Court. I'm joined by my colleagues this afternoon, Justice Michael Hyman and Justice Celia Gamrat. If I can ask counsel to introduce themselves, starting with counsel for Appellant. Each side will have 20 minutes in total. So for Appellant, if you would let me know how much of your 20 minutes you care to reserve in rebuttal, I'd appreciate that. So, Appellant. Thank you. Ian Jackson for the Appellant, Andrea Billups-Dryer. And if I could, I'd like to reserve five minutes for rebuttal. Okay. Thank you, Mr. Jackson. And Appellee? Good afternoon. Brenda Gibbs on behalf of the people of the state of Illinois. Okay. Good afternoon, Ms. Gibbs. Okay, Mr. Jackson, we will begin with your argument. You can assume that we're familiar with the briefs and the cases, and you've seen our order that we entered setting this case for argument, so if you could address the issues that you care to, including the issue that we raised. Definitely. Thank you. So, good afternoon, Your Honors, and good afternoon, counsel. Again, Ian Jackson for the Appellant, Ms. Andrea Billups-Dryer, who is in attendance here on Zoom today. I definitely will get to Your Honors' question shortly, just discuss a little introduction first on a couple other matters first. This unusual appeal arises from the Circuit Court's order denying Ms. Billups-Dryer's motion for the refund of the money the government exacted from her as a consequence of her now-invalidated criminal conviction. In Nelson v. Colorado, as Your Honors know, the Supreme Court held that an individual such as her is entitled to a refund of such money. Additionally, the process to obtain it must be minimal, but there still must be some process, and here in the Circuit Court, Ms. Billups-Dryer said enough or showed enough to initiate the Circuit Court's further inquiry on this. The Circuit Court— There's a big difference between this case and Nelson. In Nelson, the state was holding all the funds. They were distributed to state entities. It was all within the state. In this case, we have a third party that's not before us, the victim, who received the bond money. So, that is a question that the Court never addressed in Nelson, and it kind of was raised by the dissent, but it wasn't raised—clarified by Justice Ginsburg's opinion. That's right to some extent, Your Honor. However, both of the petitioners in Nelson, there's a consolidated appeal, and in both of those consolidated cases, there was restitution that had been exacted from the petitioners. Restitution to the state. Pardon? It was paid to the state. It wasn't paid to a third party, according to what I saw. If you look at the case, it doesn't say otherwise. The state does not specify one way or the other, was my understanding. So, I understand that the restitution is perhaps a less clear-cut sort of issue. Isn't that the most important issue here? I think, with regard to the cost and fees, Nelson is so clear that, I don't know, it seems to be why it should go down, and there's a question of how much, but it doesn't seem to skew it. We're really here, as I understand it, on the $9,000. It is certainly the largest number and the one with probably the least direct or clear-cut guidance for this Court. I will absolutely turn right back to the restitution. I just to comment briefly on the cost and the probation fees. I think that's one of the areas of this case where the parties agree, and the state does agree that remand is necessary, and the state agrees that there should be some sort of fact-finding process on remand to establish what was actually assessed, what was actually paid, and then it appears that the state further agrees that the clerk of the circuit court should be the entity to disburse those funds. At the time the state filed its brief, and when I was writing the reply, it was my impression that the state did not dispute that restitution would be properly reimbursed by the clerk of the circuit court either. They didn't dispute it, at the very least. Earlier this week, that seems to have changed. The state filed this motion entitled as an emergency motion to cite additional authority, and now the state is actually making a new argument, somewhat resurrected from the circuit court, that the clerk actually is not responsible for refunding the restitution that's already been disbursed to a third party that is not the county. Before I say anything about the motion, I would like to say some things about why I think the clerk of the circuit court is the proper entity to pay out, to reimburse the restitution. Before you get to that, from your point of view, you told us what their argument is. What is your position on the fees and costs? Is there any question what the amount is in your position? Or does it have to go with them, or do you disagree? No, I agree with what I think the parties agree on. My position is that the record is not yet sufficiently developed on exactly how much money was assessed and exactly how much money was paid, in particular as to the probation fees. Well, I mean, you know they were paid, but you don't know what the amount was? Is that what you're saying? That's what I'm saying, because her probation was terminated satisfactorily. I'm inferring from that, and it was terminated early as well, I'm inferring from that that she did indeed pay her probation fees. I'm inferring from that also that the court costs were satisfied, but the state argues the record doesn't show that she paid these fees. It does show. Let's go to, and I'm referring to their briefs, so they say that the adult probation status report in the June 24, 2021 court order, it says that she fully paid her restitution and probation fees. The report states defendant has paid her restitution and probation fees in full. No, that's not. We don't know what the amount is, is my understanding, however. So, it should be. The $874 is not the amount. Pardon? You're contesting, it's not $874, are they're contesting it? I, no, my position is that the $874 is court assessments. There are separate probation fees set and assessed, determined by the probation department, and some of that depends on including how long someone is on probation. I think it's usually a monthly fee that then must be paid in total at the end. So, the record is bereft of details about that. I think it should be easy enough to ascertain by the trial court. Nelson says it's got to be a real simple process. Exactly. So, what are you suggesting? We set it back with instructions? Yes. And what are the instructions? Yes. So, the trial court, the circuit court needs to have some proceedings to do some fact-finding, give the parties some time to gather the best documentary evidence available to file and present in court. I say file because I do think in case there are disputes or difficulties, of course, it would be helpful for this court to have a clear record of what documents are being relied on. Whose burden is it? It's a weird situation, right? Typically, the movement... The movement has that information in their possession, for sure. Pardon? Doesn't the state have the information, the probation, what was paid? Yeah. I mean, I think... Because they're asking in their brief that you seem to have... You had to come up with something to show that she paid it personally or something like that. And I disagree with both of those points. I mean, I think in most situations... That's why I asked the question. So, whose burden is it? Well, the state and the trial court absolutely have an important... I would say it's their to produce... To make sure that sufficient information is considered so that the court can make its assessment of the information available and then order the amount due. Let me say, make no mistake. If your client wants the money back, your client is going to come up with a receipt to show what she paid because the state may say, she paid $600. She's going to knock on your door and say, no, I didn't pay $1,500. So, really, it behooves her to come to court to say, here's my receipt, here's what I paid. And if the state wants to dispute that number, then the state should respond to that. But really, isn't it normally to move on to say, I want it back and here's how much I paid? In ordinary circumstances, yes. Here we have things were kind of cut off just at the point of her raising the issue. And as I said at the outset, she said enough to kind of initiate further inquiry on it. And I agree that in most circumstances, an individual in her position who is bringing this to the court's attention is going to have, as you say, the interest in providing as much information as they have, and they should be absolutely able to do that. Mr. Jackson, if I could give you to the real heart of the case, which is the receipt. You have five minutes left. Thank you. So, just one moment, please. Well, let me start with a question. There's two bonds. One was a $2,000 bond. It went to the attorney, and that's not in dispute, right? Right. And how did that get paid? The $2,000. Where did it go? Where was the trail? That money was, I don't recall. It went to the attorney, right? Yes, it was Exonerated Juror and trial attorney. And she had signed in an assignment of the bond to her husband, hadn't she? That's what the record says. Okay, yes, that's right. For the pre-trial, it was assigned. The post-trial bond was not assigned. Right. So, but the $2,000 was assigned to go to the husband, and it was agreed that it would go to the lawyer. Is that right? Yes. Additionally, that money is not in dispute. Why should you get that back? Why is that any different than the $9,000? Because it's not money paid as a consequence of the conviction that has now been validated. Why not? It was returned for the pre-trial. I mean, so you're saying there's a difference. So, certain money, certain bonds that a defendant pays are not included, and certain ones are? Well, you're arguing that those... But didn't he raise the $2,000 earlier? The $2,000 represents compensation for services. Is that right? Right. What I think happened during the course of briefing with the $2,000 is this. I said broadly that the trial court erred, it violated her due process rights by denying her motion. The state response said, no, and pointed to the $2,000 saying she's not entitled to that money back. And in reply, I agreed. I said, that's not a conviction-dependent assessment. That is not money that she is entitled to. How do we distinguish between that? But see, I thought if she's put... The Supreme Court said, if you're positioned, you seem to be distinguishing that from the $9,000. And I'm trying to understand why. Because any bond paid would be returned. That doesn't... Why wouldn't that be returned? Why should she be out anything if she was... She's not guilty of anything. It's dropped. It's as if it never happened. That's what the Supreme Court of the United States said. Are you following the United States Supreme Court? Are you making a distinction, an exclusion that is not in the decision? To me, this is in accord with Nelson, that the money that was paid for the pre-trial bond was not an assessment paid as a consequence of her conviction. It was as a consequence of the proceedings and the accusations and all of that. But as far as Nelson is concerned, it does not cover that payment, which, as Justice Taylor points out, was transferred for payment of services that she would presumably otherwise owe. Distinguishing the next one. It was a bond, right? It was a bond. The $90,000 was a bond. The $90,000 was a post-trial bond after a finding of guilt. It wasn't. The restitution is a different... They're both bonds. In one, you say she has no right to get back. She's spent to the lawyer. In the other one, you say, no, she has a right to get back. But instead of going to the lawyer, the second one went to the victim. And whose suggestion was it to go to the victim? The... Ms. Phillips-Dryer, through counsel, was open to that option as a condition of probation. And asked. No, I never said that. Pardon me, ma'am. Ms. Phillips-Dryer, you may not speak during your proceeding because you're represented by counsel. I would admonish you. And I would ask you to not speak, let your counsel speak for you. Thank you. The attorney asked for it and suggested it. That's what the record says. You don't disagree with that? No, no, absolutely not. So if they asked for it, and they suggested it, and it was done, how is that different than the $2,000? Because that money was taken and turned into payment for an assessment that was a voluntary conviction. The $2,000 was made payment to a lawyer. This one, the money, it didn't have to do that. Do I understand? There's a distinction between these. You're trying to make a distinction. I don't see it. Couple things on that, Your Honor. One, the circuit court had discretion to order it converted in that manner, regardless of what defense request it had. But the party agreed. They suggested it. Whether they had that discretion or not, when somebody says, I need to do something, right? I wanted my $2,000 to go to attorney fees. And then they say, I want my $9,000 to go to restitution. And then years pass, right? And the order was entered, and the appeal happened, and the restitution was a separate order. Was that order ever appealed from? The rest of it back in 2019? Her conviction and the judgments of conviction were appealed. The issue of restitution was not appealed. Are you suggesting, if I may ask, just for clarification, it sounds as though Your Honor is making a suggestion of a sort of invited error here on the part of defense? I didn't say that. OK, I just, from my perspective, that the defense, Ms. Phillips-Stryer, I noticed that you put a comment in the chat. You may not do that either. I'm sorry. I was trying to send it. This is your final warning. If you interrupt the proceedings again, I will order the court to remove you from the proceedings. Go ahead. I'm sorry. I apologize. Go ahead, Mr. Coup. Thank you. Because the judgment of restitution is no longer valid. Is it no longer valid? It doesn't even exist. The state doesn't have the money. The escrow, it's not in the escrow. It's given to a private individual. So why should it be returned when the lawyer said, yes, she had a choice. She could have gone to prison for two years, I think, and or do this. That was her choice. So that was a choice she made. Many people don't even get that choice. They just go to prison, spend years in prison, and then they come and their case goes to us and we reverse and they're free, just like she was. No retrial, reversed, nothing. It's off the record, everything. They get returned the money and everything else. They don't get paid for their time in prison. Why would she get the money back when she voluntarily gave it to the victim? I don't have time here. You have time to answer a question. Pardon me. So the pardon me. I understand that it's not a clean situation administratively or bookkeeping-wise that the money is not where it was originally paid. And that is a problem that the General Assembly has not seen to yet in light of Nelson. However, Nelson is clear. Those petitioners paid restitution as a consequence of their invalidated conditions. And the state still had the money. I do not believe that Nelson says that. In the decision itself, that's all we know. So it's not clear. Your position is, in this case, the facts are not disputed. The money is paid out. Your position is that money is fungible. It doesn't matter whether the money has been paid out or not. That's not your problem, not your client's problem. It's the state's problem. And it's the government's problem, let's put it that way. I mean, that's your position, right? It has to be. Yes, absolutely. Yes, she has a right to its return. I may press a rebuttal. I can speak a little more detail about why the clerk of the circuit court is a proper entity for that. But one way or another, she has the due process right to its return and cannot face much of an impediment to obtaining it. So, Mr. Jackson, let me ask you. You said that the pretrial bond was assigned. Was the post-trial bond assigned?  So, was there something that your client or her trial counsel authorized in writing other than orally for this $9,000 to go to the victim at the time? No, I am not aware of anything on the record that would show that. If there is, isn't there an order? Well, there's a court order, but that's not pertaining to the position that counsel took or offered at the sentencing hearing. Let me ask you this. So, the restitution order is separate and there was no timely notice of appeal of that restitution order. So, here we are and we realize that her conviction was vacated. We understand, Nelson, in your position. But the fact that her attorney offered up this $9,000 to be used as restitution and the fact that there was no appeal from the restitution order that was consistent with that request, how now does your client get this ability to challenge that? If she didn't timely challenge the sentence itself? Because she has been restored to an innocent person. She has been restored to the place of being presumed innocent and the state has not sought further prosecution, expressly dismissed the charge. Does the state still have the ability to go back and prosecute her client for this? I don't know where we might be at on any told speedy trial clocks or the like. But in theory, legally, yes, the state does have some ability to reinstate prosecution that they have knowledge. Let me ask you this. What if your client had been ordered to pay restitution from her pocket, not from the bond? Would your argument be the same? Yes. And who would you go after? So your client pays it directly to the victim. Ordinarily, that is not how the restitution would be paid. Ordinarily, as here, it would be at least go by way of the clerk of the circuit court. And then final question from me, at least. You said the clerk should write the check. I think everybody agrees like the clerk procedurally writes the check. But whose pocket of money does this come from? It would start from the clerk of the circuit court. And then whether that creates bookkeeping or other administrative issues on its part, the clerk will have to communicate with the county about how to accommodate this. You know, and it's not unheard of, right? At least in the context of the courts, excuse me, the court cost probation fees, those get disbursed to these accounts. And in these other cases where the clerk of the court, like in Scalise, where the clerk of the court is just directed to return those monies, you know, we don't know whether that money, the exact same block of exact dollars or what have you is still there. But the government has a burden to sort that out so that it can fulfill her due process rights and protect them. So I have a question in terms of, and I'm assuming, you know, maybe you know the answer, but I'm assuming that the clerk, you know, money is fungible. The clerk doesn't maintain separate accounts for each case. They have records, obviously. And for monies that are paid and what cases they are paid, but they're all presumably deposited into an account. Money comes in and money goes out. And so your position would be that the money comes from that account because it's fungible. Yes, yes, fundamentally. Okay. Any more questions? No. So the opinion by Justice Ginsburg doesn't mention the bond, does it? No. In fact, what it says, and I'm reading it, it's the first, this is the first sentence, which has the holding. When a criminal conviction is withdrawn by a reviewing court and no, or validated by a reviewing court and no retrial will occur, is the state obligated to refund fees, court costs, and restitution? This is an important word. Exacted from the defendant upon and as a consequence of the conviction. Our answer is yes. And later on to talk again, nonetheless, guilty enough for monetary exactions. Now, doesn't the question then become for us whether we have an exaction under the facts here where the attorney asked and suggested the restitution be paid to the victim. And then the victim was made whole. Now, there's no doubt your client was convicted by a jury. And the question was that the reversal rested upon was the directions from the court with regard to her representing herself. That is an issue that had nothing to do with her guilt or innocence. And so when the victim was made whole, why would anybody retry? And so, you know, if, again, if that was a problem, the proper time seemed to me to be when the order was entered back in 2019, so that we wouldn't be here like this. Um, you know, who's going to get that money? The proper time. I'm sorry, I don't understand. It should have been raised with the order. And the only issue raised was that the admonishments weren't given in the proper way. So it wasn't a question whether it was substantial, the evidence and everything else. That was not the issue. So whatever she paid it back to the victim. Now, in this case, it's $9,000. It could have been $9 million. There's no difference. So you're saying that the state, when a defendant's counsel says on the record, I ask and suggest that we pay restitution and then it's paid. It's ordered because they asked for it. And now you're saying the state is on the hook for the $9 million. Yeah, but $9 million, too. So $9,000. Well, it's $9,000 here. It could be $9 million. It's not the amount that. Right, yes, what was offered or suggested or argued at sentencing does not bear on her entitlement to the refund. Why? Because the restitution, which was paid on by her or on her behalf, on account of the entire prosecution, that order is no longer valid. There is no longer a valid judgment. But she voluntarily did that. She could have had it stayed there, could have had it stay there, right? And had to do that. I think that would be out of some other money. Got money elsewhere. Could have done a lot of things.  That was done. And the question is under Nelson, we look at other states, except for California, other decisions, and there aren't that many, but they don't support your position. Now, they're not in Illinois cases. Right. If your honors, of course, would always have the discretion to order a supplemental briefing. If your honors would appreciate- Well, do you have any response now? I mean, I'm asking-  Do you have any response now? I can't speak to how other states have handled this situation. But what I can say, again, is that- It was in the briefs. Some of those cases were raised in the briefs, weren't they? Any stuff you feel will pass our time, so I'm going to turn to Ms. Gibbs for the state. Thank you, your honors. May it please the court, counsel, I'm Brenda Gibbs, assistant state's attorney on behalf of the people. I would like to clarify some of the issues we've gone through in terms of the state's position. We do agree that this should go back to the circuit court for determination of how much Ms. Phillips has paid toward her court assessments. That would be $874. That was fines, fees, and costs. We do agree that the amount of probation needs to be ascertained. And we do agree that the state should be part of the process. I agree with Justice Gamorath that it should be a collaborative process. In the record, defendant filed an affidavit, a sworn affidavit, saying she paid these fees in full. So she should have the opportunity to bring in what she can to support that. And then the state can reach out, I'm sorry, the people can reach out to- Why is the burden be on her? She's a defendant. She paid it to the state. The state knows what they received. Shouldn't this burden be on you? This is not supposed to be a big, drawn-out process. That, to me, is a violation of Nelson. That's exactly what Nelson does not want to happen, is to have a big, drawn-out process. You're saying the burden's on them when you have all the information. And they can respond to it. As Justice Gamorath, you know, who's going to respond? Well, they could say, well, that's not right. And here's why. But why start with them when we should start with you? Because you're the ones that received the money and account for it. I understand that, Your Honor. And I'm not implying that she should have a burden. I'm saying that she should be heard, because- She can be heard, but you can go first. In our instructions, shouldn't we say that the state should come forward with what they show that she paid, and then the defendant can respond to that? I agree with that. My position is that she should have an opportunity to bring in what she has, so that the court can look at everything together and make a decision. And so, she's not felt that she's left out- She would only have to bring in what she has if there's some dispute. This should be a very simple process. This is what we show. And if she says, that's consistent with my records, then it's done. If she says, no, that I paid more, then she can offer what she has, and the state can decide whether to accept or contest it. I agree with that. My suggestion was just that, as Justice Hyman said, in the interest of timeless and getting her to the resolution, when it comes back down, all parties can come in with everything, and it might be resolved in one proceeding. No, no. It seems to me you should go first. And that's what Justice Taylor was just saying. You have that information. They shouldn't have to do it, because it could be very simple. It may not even go to hearing or anything, because when they get your information, they'll either say, yes, it's right or wrong. If it's wrong, they're going to put some information in, and the judge can make a decision. But to have them go and you go at the same time, that doesn't make any sense. Somebody's got to go first. And it seems that you have that information. And it's going to be your information. It's going to probably be the one that is easier to obtain. And it's what you have. If it's not right, it would be a different problem. I agree with that, Your Honor. And again, the people are willing to reach out and obtain what they are able to obtain, everything they can to resolve it. Ms. Gibbs, you had said probation fees. You agree that probation fees should be refunded. Yes, Your Honor. The record shows, reflects that they were paid in full. And we are just, at this point in the record, there was no indication of how much. So an amount is necessary. But the record does show that they were paid in full. So let me ask you. The state agrees that she gets these fines and fees and costs. You're disputing the $9,000. Yes. All right. Why wasn't the fine disputed in cost? Why hasn't that been done? Well, in the proceedings below, her amended motion to reconsider that her attorney argued did not, and this is from what I'm reading from the record, there was no express reference or request for that money. The request was centering on the $9,000 bond money. And so as I'm reading through the record, my interpretation is that because it was not expressly put before the court, the court did not address it. And that's why it needs to go back because she is entitled to that amount. And so we need to determine how much she's entitled to get back of those court fees and probation fees. With respect to the $9,000 in the restitution, our position is that that does not fall into the category of Nelson for the refund. Nelson faced the decision on a property deprivation. Those clients, those defendants were deprived of their property because the one, Ms. Nelson had money withheld from an inmate account. Mr. Madden was on a payment plan and he paid for the state. In Colorado, the payments go to the clerk. And in terms of restitution, they go into a common fund from which they are then distributed to victims. Now, Nelson, under my reading, was discussing the deprivation of those individuals' property because they paid it to the state. Here, the restitution was not paid by Ms. Phillips. The record shows that the money was withdrawn by her husband from his retirement account. I don't understand why that is relevant at all. There's not a word about that in Nelson. In fact, it doesn't say who paid it. It doesn't say, that's not important in the court's, and I read to you, the court's ruling. And it says that it's whether the money was exacted. And if the restitution was exacted, it doesn't say, oh, but only if it's exacted from the defendant, him or herself. I mean, does that mean that if the money is given, I mean, what you're saying is that it only refers to the individual who has to be the defendant themselves. There's nowhere in there. Tell us where that is. In Nelson, in the underlying cases, I did not find any dispute between the parties, any information in the record that someone else had provided those funds. It doesn't matter. It's not relevant who provided the funds, because I usually think it's relevant in a case where the, you know, a lawsuit, say a criminal lawsuit, the defendant's attorney is being paid for by their father. Does that matter? If it's payment to the attorney, then it would not fall within Nelson. I understand. But because it doesn't matter who makes the payment. And I just don't see where in the law it says that it's only the individual. And it's particularly in the case where it's exacted. It didn't say, it's still exacted, whether it's from the defendant themselves or a third party that gave them the money. It's still exacted. Your Honor, Nelson said money's paid by the defendant. And it does not say that. Tell me where it says it. It doesn't say paid by the defendant. It says exacted. She was very careful about that. Throughout the opinion, there are numerous quotes in which Nelson says, what right does the state have to retain money paid by defendants? It's, there is that terminology. I don't have the opinion up in front of me to give you the quotes. But I did quote in my brief numerous times. And the reason that I'm arguing it makes a difference is because Nelson was clear in that the defendants are entitled to be restored the property that they pay. They're entitled to be restored to the circumstance they were in before they had to make those payments. So do we have to look at whether a husband had a joint account with her? I mean, it was a retirement account. Doesn't she have a right to a retirement account? Do we have to determine whether because they were married, a bad retirement might be in his name, but she has an opportunity to get that money. Should he die? I mean, where does this end? In the record, when the issue of bond came up, defendant's attorney told the court, my client has told me she does not have the means to pay the bond. She did not have the means to pay an attorney during her trial. And that's why she went pro se. She doesn't have the money. And then later, the attorney in the motion indicated that the husband had tapped into his retirement savings to use the money to pay for the bond, knowing it would go to restitution. Because defendant, when the bond came up, it appears that that account didn't occur to her, that she didn't have access to it, which means they weren't her funds. And because Nelson is restoring a defendant to the status where they were before they were required to make these payments, it's giving them back what they paid. Nelson said, this is not compensation. This is restoration. And that's what the bond is for. So you're saying that the husband who gave the money for his retirement, he's out the money. Is that what you're saying? We're supposed to find that somebody who did something for a spouse, so she went to pay the restitution, should be penalized. That's what you're saying. We're not saying that she should not be rewarded. She's not being rewarded. Who said she's being rewarded? If she wanted to, that bond, she didn't have an assignment. What about the assignment? If there was an assignment, that's different, isn't it? It is different. In that case, the husband and the source of the puns hearing established that it came from his account. And then the bond deposit was presented by her daughter. And so in my review, it makes sense that she wouldn't assign the money to the daughter because the money didn't come from the daughter. It came from the husband. And it did not seem as if there was any anticipation that that money would be coming back in the way that it has now. Well, nobody knew that. Otherwise, we wouldn't be here. I don't know why she didn't assign it. But in terms of retirement- Well, she didn't assign it. So you're talking about an assignment. It seems to me it would be totally unfair. You want a third party who gave money to get somebody so they probably wouldn't be in prison or jail. You're putting the onus on that person who came forward. And you're saying that's the law, that they're the ones that are going to- It makes a lot more sense for the clerk of court to be the one that's going to take the hit on this than that. I mean, if that's your argument, it seems to me the clerk should pay the money back because they're not the ones that should be hurting here. My argument is that based on Nelson's characterization of this as a property deprivation, I'm looking at whose property was taken. And the property that was used to pay the restitution was her husband's money. It was not her money. She said it was her husband's money. So you're saying there's a distinction in the law. It doesn't say that anywhere in the opinion. And other courts have gone over this. There have been some decisions around the country of this, either before Nelson and after. They have made that distinction. In this case, there are two cases from Illinois. People v. Markovic and People v. Resnick, where the court says that bond money can be used to pay fines despite third-party claims on the funds. And if that's the case, then why does it necessarily follow then that only the third party can claim the refund, as you're arguing? I don't get it. In those cases, Your Honor, I believe that there was a conviction. And when there's a conviction, the bond money presumptively belongs to the defendant to satisfy fines, fees, and costs. It does not presumptively belong for all circumstances. In this case, as counsel argued in his reply to me- Is there any case that draws that distinction that you're aware of? In People v. Lovelace that I'm aware of, the defendant was acquitted and the bond in that case was in excess of $355,000. The lower court of its own accord sent an order, a proposed order, to the law firm that had provided some of the money, an individual named Mr. Hare, H-E-R-R, who had provided some of the money, and to defendants, proposing how it will be distributed, and then gave them a timeframe to respond and to come in and to assert their claim to it. In this case, as the defendant argued in the reply, when the conviction was vacated, so too were the judgments that followed. The bond order was vacated, and those funds no longer existed as bond money. If there's no bond order, then there's no requirement to follow the statute in terms of how it should be distributed. It should revert back to money that was deposited, and that money came from Mr. Dreyer's account. It did not come from defendant, and because- How do we know that? Wouldn't you then be putting this enormous burden on the trial court to conduct an investigation into the funds? How do we know it wasn't a gift? Or how do we know that the money had been paid back by the defendant to the father, let's say, in this case? Why should we get into all these collateral issues and put that burden on the trial court? If the funds belong to someone else, and the court orders them returned to defendants, then that would be imposing upon the other individual's interest in their property. That would be another due process violation. We are proposing this in the position of being fair. What is fair to all the individuals here? And because the record shows that the money did not come from her, having that bond order removed, having removed that obligation for restitution, and knowing that counsel represented in her motion and at the hearing on the bond that the husband obtained these funds for the purpose of bond, knowing they would likely go to restitution, and knowing they would not go to attorney's fees. So, Ms. Gibbs, let's assume that the court disagrees with you on this point. Let's get to the crux of the matter, which is knowing that the funds have been dispersed. Is it your position that the government, whoever the government is, whether it's a clerk or the county or the state's attorney, that the clerk cannot be liable for the return of the funds? Is that your position? Yes. And let me clarify. My motion was not to raise a new issue. My motion was expressly to address that question that Your Honors asked in regards to who is liable. That was the individual and express purpose of that motion. I'm not raising new issues. I was responding to that question. In the Illinois cases that I did cite, in the one case in Drury, the distribution was a mistake, and the court found that the clerk was not liable based on that mistake, and the county could not refund the money because it didn't have it. There was no unjust enrichment by virtue of the mistake. In the other case, in Fulkerson, the clerk dispersed the funds to restitution without authorization. There was no court order. And in that circumstance, the clerk was liable because they sent the funds without authorization. So, Fulkerson, I mean, that was a... The clerk paid out the bond money it had collected without a court order, as you pointed out. But in Hayes, that was a post-conviction proceeding, which is entirely a different animal, right? Because, as we know, post-conviction proceedings can occur years, sometimes decades later. And I don't think anyone is suggesting here that if the money had been paid out after the direct appeal had been resolved, but before the post-conviction, that the defendant gets the money back. So, I mean, I don't know that these cases that you cite are really that helpful. But if I could then turn you back to the point that was raised with counsel for Avalon. He sort of questioned whether we were sticking out an invited-error position or some type of waiver position. But there were questions that we put to him about the defendant asking for this. So, is that your position, that because they asked for it and they got what they wanted, that they no longer have a claim to it, even though the conviction has been reversed on appeal? No, that's not our position. Nelson was clear that when your conviction is vacated, you are returned to the status quo ante. And orders that were entered pursuant to that conviction, regardless of how they came about, are reversed. And so, it does not matter. And so, just to be clear, you're not arguing waiver or invited-error or agreement by the defendant. Is that correct? That's correct. That's correct. We're not arguing that, no. So, if I'm hearing you correctly, you're saying, but for your property deprivation argument that she's not the right person because of her husband's money, you would say she's entitled to it. In other words, if this $9,000 came from her bank account, you would not be disputing that. Correct. We're not disputing that she's entitled to the refund. The challenge is where the funds would come from. In Illinois, the monies that are paid to the clerk are disbursed to fine fees and costs and probation. Go to specific funds associated with those fees. The restitution is sent to the victim, unless it's a different circumstance. Here, it was sent to the victim. The clerk acts as an escrow agent in that circumstance, and the county never receives the money. And so, where Nelson is requiring that the state cannot retain the money, here, the state is not retaining the money. It doesn't have the money. The money went to the victim. Well, Ms. Case, let me press you on that point. I mean, money is fungible, right? I mean, money comes into the clerk's account or accounts, and money goes out. I don't know that there's separate accounts for each case. And so, yes, the money that was paid in restitution was disbursed to the victim here. But why does that matter? Because the money was disbursed pursuant to the order. It was disbursed from the bond. The bond slip has a number on it. In this case, it was D, and I think it's six numbers. It ended with 485. The clerk, when they get the bonds under the statute, they have a record of the bond, the amount, and they just hold that until they are ordered to do something with that bond. When the order comes in, they are releasing that money pursuant to the order, and they're releasing that bond money, that $9,000. It's not fungible in a sense that the fines and fees are fungible, and that they go to the treasurer. The bond money is not sent out to the treasurer. It's not sent to a fund for probation or for the operations of the sheriff. It's not in a common fund. This was different in Colorado, where it wasn't a common fund. And in Colorado, the problem was that there was no authority to order a reimbursement for that fund. Barbara, you say the restitution was not put into a common fund? Here, it was not. The bond is not in a common fund. The restitution in Colorado was in a common fund. But how do we know the bond here is not in a common fund? I'm reviewing the statute. There's a Clerk of the Circuit Court Act, which distinguishes how and what the clerk will do with the different monies. And when the bond comes in, it's recorded. It's not just put into a large fund. I mean, it's put into a fund, but it's recorded in terms of what money is attributed to that bond flip. So it's not fungible. I'm not suggesting that the record is not kept. Of course, the record must be kept. What I'm suggesting or asking you is, are there separate accounts for each case? I don't think you're saying that there are separate accounts. I think you're saying that there's one account in which money is deposited and money is debited. And that records are kept as to the monies that go in and what case they're related to and what defendant they're related to. And records are kept as to checks that are issued from that account to what victims and what cases and what defendants. Is that your understanding? Yes, yes. And with the bond form as it is now, if you go to the clerk's office and they put in the bond, they're going to say this money was disbursed, we don't have it. It's not there for them to release because they were just holding it in escrow until they were ordered in terms of where it should go, whether it was going to go to fines and fees, whether it was going to restitution. So it's not there to be refunded as the fines, fees, probation, because that account is used to fund the different departments and there's a fund that has those common funds. The bond is not the same circumstance. So Ms. Gates, let me ask you, this whole situation could have been avoided if the state had simply either, one, obtained some agreement on the record that Ms. Phillips-Dryer would not seek to recoup these funds paid in restitution if she prevails in her appeal. We don't have evidence of that. But perhaps more importantly, had the state simply asked the court to stay the payment of restitution until the appeal is resolved, the direct appeal is resolved, you wouldn't be in this position because the monies would have been kept in escrow, you say, and then dispersed accordingly after the appeal was resolved in Ms. Phillips' favor and the state elected not to re-prosecute. So the state's not a particularly sympathetic character here when it had the ability to avoid the situation. And one thing I would point out is the notice of appeal was filed the day before Ms. Phillips-Dryer filed her notice of appeal one day before the restitution order was entered. I understand that. And not to appear unsympathetic, but at the same token, Ms. Phillips could have asked for a stay of the bond order as well. What procedural mechanism is there to ask for a stay of the release of the bond? In civil court, I'm familiar with it. Tell me about, is there a particular criminal rule that governs staying of the execution of a monetary judgment associated with a conviction? I did research that issue. I did find the civil court procedure. I did not come upon the criminal procedure. And I looked into it and reading the record, the attorney, Ms. Lockett, had argued that in terms of staying the bond. And so I looked into that avenue, but I was not able to determine the procedure that would be required to be followed to accomplish that. Who argued to stay the bond? In the proceedings below, in the arguments in terms of Ms. Phillips' motion, her attorney, part of her argument was that the order to release the restitution shouldn't have been honored. It should have waited. It should have waited. That was after the fact. Nobody argued that at the time that it was released. And I was referring to that because that was what, in my mind, that triggered the research to look into that, how that would have been accomplished. But I was not able to ascertain or determine how that would have been accomplished at that point. Is that commonplace? I mean, you do criminal cases all day long. Is that commonplace? I personally don't do criminal cases. I'm exclusive in appeals, so I'm not able to answer that. But I did reach out to try and get an answer. I wasn't able to get a definitive one in terms of the statute that would govern that. And so what about Justice Taylor's comment to you to say, well, State, at the time when you knew this was going to be signed over and you knew she had appealed, shouldn't somebody from your office have stepped into the judge and said, Judge, let's hold off paying this victim $9,000 and see how this appeal plays out. We'll hold the money in the clerk's hands just in the event she wins her appeal. Can you do that? Or is there a statute such as the Victim Rights Act that says you get paid right away and the State couldn't interfere with that? The restitution statute does say that restitution should be paid as quickly as practical or as quickly as possible. There is wording in terms of delivering the restitution in a timely, prompt manner to the victim to have them restored to be held. So that's the intent, but there's no mandate that the victim has to be restored immediately upon the entry of a conviction. There's not a mandate, but... What are the consequences of a defendant not paying restitution that he or she's been ordered to pay? That would... After a number of years, there could be, I believe there could be assessments of interest and I believe that down the line, if I'm correct, there could be garnishments that are imposed for that. I'm not clear on whether that would prevent the probation from being terminated satisfactorily. I don't believe that probation can be... I don't believe that a person can be penalized in terms of not making monetary payments for other obligations. I don't think that that non-payment can affect a probation term, but I do believe from my reading of the statute that there can be down the line, years beyond when payments are due, that the clerk can attach liens because the order for restitution is enforceable as a judgment lien, as any other civil judgment lien. So there are consequences that can attach in a certain timeframe from not paying restitution. So you raise an interesting issue then, because you just said the word civil, like in the civil. So isn't that the answer that in this case, maybe since you didn't find anything in the criminal law, civil law, she would have had to put up a certain amount of money in order to appeal because there's a judgment there. In order to stay in the civil procedure, that does require a bond to stay. Right, right. So is that a potential answer here? Because you just said in the situation where restitution is ordered, it would be a civil proceeding down the road if it wasn't paid. I'm not sure, Your Honor, how the two would marry, but the restitution statute does indicate that a judgment of restitution is enforceable. The same as a civil, it's a judgment lien, just as a civil judgment lien is a judgment lien. It's enforceable in the same way. Any more questions? If we agree with Mr. Jackson's reading of Nelson, and it does say restitution, and she's supposed to be in the position she was, as if this never happened. Okay, now, there's, I understand your argument that the defendant and everything, but putting that to the side, then why shouldn't the state who is responsible for that money be required to pay it? I mean, if you wanted to go after the victim, I guess that's not our decision, it'd be your decision, and whether that could be a winner or not, I don't know, but wouldn't it make more sense in this situation that the state is responsible, that the mistake was there, that you had your opportunity to do something about it, and that she should be made whole, somebody should be made whole. In terms of liability, in that respect, there was no wrongdoing at the time in dispersing those funds pursuant to the proper court order, and in that respect, there's no liability. But she appealed the next day, and the order on restitution was after the appeal of the following day, so she appealed the same day as sentencing, and then the next day was the restitution order is on here. Look, we're going to be in a situation, if this gets reversed, which is what they were asking for, we're going to be in a trick box here. There is that potential, as you suggested, I don't want to confirm because I don't have experience to know that yes, that can be done, but under this statute, it's not a requirement that the orders are stayed for whether it's a sentencing order, whether it's a restitution order, there's no requirement that those orders are stayed, there's no trigger mechanism by filing an appeal that automatically stays those orders, so it's not required, and in that sense, there was no wrongdoing on part of the state because there was no requirement. Does the judge have discretion to stay? I'm sorry? Does the judge have discretion to stay? Your Honor, I did not research that issue, I apologize. What about you? Your argument distinguishes restitution from fines and costs, and there's nothing that I saw, tell me if I'm wrong, but is there anything in Nelson that distinguishes fines and costs from restitution? So if it's all one, and that's the way they phrased it in Nelson, and that's the United States Supreme Court talking about due process, then wouldn't that mean if you say, and you've conceded the fines and fees, so the question is, if fines and fees is like restitution, I mean, that's a phrase, it's fines, fees, restitution, and you're saying, no, we're going to treat restitution differently. What am I missing? I'm not distinguishing restitution in the broad sense, I'm distinguishing it in this case because the record below shows that those monies did not come from her, and under Nelson in terms of property deprivation, it was not her property that was deprived, the property did not belong to her that was deposited for the bond that went to restitution. That is where I'm making the distinction. As Justice Gamerau suggested, if this had been a different situation where Ms. Phillips had posted that money from her own account, then that would be money that she paid. Here, and again, it's based on the record, it's not a broad reading, it's based on the record here that shows that someone else provided that money. Now having that bond order vacated in terms of what is fair, whether it's her or a different third party, the money should go back to the person from whom it came. That was just the person- Taking your argument to the conclusion, what you're saying to us is it all has to do with the clerk. If the clerk gets that restitution out as fast as possible, when it's a third party paying, they're done, right? As long as you're sticking it to people who get money for restitution from a third party. And if it was a defendant, you said, oh, she's fine. We got to pay it back. But if it's a third party, oh, we don't. So you're distinguishing that. And why should the clerk be able to distinguish that? It doesn't seem to make any sense under Nelson and other cases similar in Illinois that were cited too. My distinction is that the $9,000 or as you said, $9 million that someone else put up should not go back to defendant. Not that it should not go back, period. It should not be returned to her because giving her that $9,000 or $9 million is not restoring her funds. It's placing her in a better position than she was when the funds were used. Okay. All right. Let's say for purposes of argument, I'll agree with you. So now, why doesn't the county pay it to the husband? We know where it came from. In this context, in the motion below, defendant did not ask for that money back on his behalf. She wanted it sent to her in a personal check. She didn't ask for it to be returned. Well, that's a technicality. I mean, if the law is due process is to put her in the back of the position and we say it doesn't matter who the source was, then what's happening here is third parties get stuck and only defendants who pay on their own. So what you're saying is, in many cases, there's restitution when a young adult or juvenile breaks something, does something, they'll have to pay restitution to somebody, the window they broke or the house they broke into and the damage they did. And usually the parents pay or a third party will pay. And so you're saying, well, in those cases, we get a free ride. That's not the suggestion. And I'm finding myself to the fact here in terms of under Nelson, what was her property deprivation? What was held from her by the state? This $9,000 was not taken from her and was not held from her. It's the third party's money. And I'm not suggesting that the state would keep that. I'm just suggesting that- So Ms. Gibbs, am I hearing you that if the husband came in to file this motion and say, her conviction was vacated, I posted this bond as a condition of that conviction under Nelson, I get restored? Are you saying that the state would not contest that? In terms of the distribution of the money, yes. He is the one who has the right to get that money back. In terms of how it's going to mechanically happen, that is a question that remains because in Illinois, there's not a statute that authorizes the return of money under the circumstance. The statute that is in place in terms of reversal of conviction only addresses fines, fees, and costs. Now, Nelson also- Let me ask you this. The record. We know that it's on the record at an oral proceeding saying it's the husband's money. He came up with the money. She couldn't come up with the money. Is there a paper trail of this that shows that it's physically like his check, his check alone, and not hers? Or are we just going based on what was said in open court? Because the attorney certainly didn't have to say anything. The attorney could have said, here's $9,000. So in this case, we know it was husband because the attorney just happened to say, my client doesn't have it. We're waiting for it. But if they were silent on that point, is there a paper trail that shows whose money it is where it would be that person entitled to the refund? In this case, there was a source of funds hearing. There is not a transcript of the hearing. And the record shows that documents were turned over to the court, but those documents were not made part of the record. Okay, I'm going to stop you here. We're well past time as well. And turn to Mr. Jackson. I will limit you to five minutes. So make your points quickly. Thank you, Your Honor. I'd like to say just, I guess, a couple of things about who paid the money and then who should refund now. I agree with Justice Hyman that Nelson simply does not make this distinction about who paid the money. The state is kind of making, reading really, really hard into the syntax of how the decision is written. But it just doesn't stand for that proposition. And the state doesn't cite to any other authority that actually holds that it matters. Let me stop you. We heard from Ms. Gibbs talk about, well, when there is a refund of the bond, she talks about the Lovelace case where it's $350,000. And they had people come in and say, are you making a claim to this? And so forth. And that kind of makes sense, right? Because if you've got that kind of money, the defendant, who doesn't have any skin in the game, shouldn't walk away with a windfall of $350,000, right? Or do they? Well, I disagree that it would be a windfall. I mean, I understand the state's concern. I understand this court's concern about the money going to the right place. But the fact is, these third parties are not directly parties to this case. The money was paid either by her or on her behalf. And if there were other arrangements or agreements about it and then disputes arise from it, that could become another legal matter. But it's really not the concern of the criminal court in this case. And I want to- Isn't another answer the assignment? If she did not- Yes. She had an assignment in the first one. That's why it did what it did. The second one, there was no assignment. So it automatically goes to her. Whether, you know, by operation, it's hers. Isn't that the argument that you want to make? And that's where I was going next, actually. That based on the assignments, the default under the operable bond statute is that it goes back to her. Though, as I know in the reply, the circuit court does have discretion to direct it elsewhere. So, for example, perhaps to her husband or perhaps to her daughter. The court, however, is not required to go that far with it. And probably in most cases, courts might be wise to avoid those sorts of things. Go based on the bond statement or just based on what is, you know, was this money paid in the defendant's case? It was paid in the defendant's case. It was exacted from them. The money goes back to the accused or the formerly accused. And that happens all the time, doesn't it? I mean, if there's no assignment, it doesn't matter who paid it. It goes back to the defendant. Isn't that true? I believe so. It doesn't become this kind of involved fact finding mission. The circuit court doesn't go and find out, well, we can't give it back to you because somebody else paid it. The statute provides for what happens. Right. The court's not responsible for kind of fulfilling unknown expectations of various parties. And it does indeed punish, you know, or harm family members, third parties, friends who are trying to help. And then by extension, it would have the greatest effect on the family and friends of those with less means who are in this situation. But it could also hurt them. So say that relations go awry, right? And so somebody in good faith is putting up money for a friend or a family member. All's good. And then things go awry. And the person who is the defendant says to the court, now I want that bond back. And in this case, it's $9,000, which is a good deal of money, but it's not some of the huge money that we've seen over the years. Is that right? That the defendant should automatically get that? So tell me a little bit more about what you said was in your reply, where the judge has the discretion to send it elsewhere. How does this work? Well, so it works only in the, as far as I know, it works only in the context of bond money that is being returned. And that's what you're asking for, essentially, bond money being returned. It's restitution that originated as bond money. So it's money that needs to go back. And again, the default under this statute, skipping me right in front of me right now, but it is indeed in the reply brief there, says, yeah, the default is, if it's not assigned at the time that the slip is filled out, the default is that it goes back to the defendant. The court's discretion, where the court... The court's discretion, yes. The court could conduct that hearing, and if the court would like to, it could. Okay, Mr. Jackson, you are on time. So I want to thank counsel for their excellent argument this afternoon on the issue of what appears to be first impression. The court will take the matter under advisement. The case is submitted. Thank you. Good afternoon. Thank you. Thank you.